# UNION COUNTY, ARKANSAS

Contract for

## HEALTHCARE PERSONNEL AND ADMINISTRATION

At the

## UNION COUNTY DETENTION CENTER

For the

UNION COUNTY SHERIFF'S OFFICE
**Ricky Roberts, Sheriff**

250 American Road
El Dorado, AR 71730



Exhibit A

This Contract is entered into between Union County, Arkansas on behalf of the Union County Sheriff's Office ("Agency") and Turn Key Health Clinics, LLC ("Contractor"). The purpose of this Contract is to contract for the Healthcare Personnel and Administration at the Union County Detention Center in El Dorado, Arkansas (herein called the "Facility") under the terms and conditions detailed in the Contract.

## I. DUTIES AND RESPONSIBILITIES OF THE CONTRACTOR

### 1.1 SCOPE OF CONTRACT

The Contractor shall be the supplier and/or coordinator of the health care delivery system at the Facility, as set forth herein. The Contractor shall be responsible for medical care for all inmates (except Work Release inmates who shall, when in the Facility, receive only emergency care from the provider) at the Facility up to the limits described in this Contract. The responsibility of the Contractor for the medical care of an inmate commences with the commitment of the inmate to the custody of the Facility and ends with the release of the inmate.

### 1.2 INSURANCE

The Contractor will carry professional liability insurance in minimum amounts of One Million Dollars ($1,000,000.00) per occurrence and Three Million Dollars ($3,000,000.00) in the aggregate annually during the entire term and any renewal term of this Contract.

### 1.3 COMPLIANCE WITH APPLICABLE LAW

The Contractor will comply with the standards set forth by the Arkansas Department of Health and Jail Standards for the State of Arkansas for the duration of the term of this Agreement with the Agency.

### 1.4 CONTRACTOR COOPERATION

All The Contractor personnel, including the personnel of its subcontractors and agents, will be subject to security background checks and clearances by the Agency. In each instance, the individual and the Contractor will provide such cooperation as may be reasonably required to complete the security check. The Agency agrees to perform such security checks in a timely manner and not unduly delay such checks.

### 1.5 PHARMACEUTICAL

The Contractor shall provide for pharmaceutical management services to assure the availability of prescribed medications within a reasonable time period of the order of issue being written except where such medications are not readily available in the local community. In order to facilitate the timely administration of medications, the Agency agrees to allow the use of an inmate's home medication, as appropriate, upon the verification of the medication by Contractor personnel.

The Contractor shall provide a method for the recording of the administration of medications by Agency and/or Contractor personnel on a pre-approved form that includes documentation of the

fact that inmates are receiving and ingesting their prescribed medications. Medication administration and medication documentation training shall be made available for Agency staff, upon request, for times when Contractor personnel are not at the Facility to administer medications.

The Contractor will negotiate discounted rates with a pharmacy licensed in the State of Arkansas. The Agency will be responsible to pay the costs of all pharmaceutical as required by current applicable law.

1.6 HOSPITALIZATION, OFF-SITE SERVICES AND SPECIALTY CARE

The Contractor will arrange for hospitalization, off-site (outside the Facility) services, and specialty care for inmates who, in the opinion of the treating provider and/or the medical director, require treatment beyond what is provided at the Facility. Costs for such services shall be the responsibility of the Agency. Nothing in this Subsection shall prevent or impede the Agency from transporting inmates whom the Agency determines, in its own discretion, to require emergent medical treatment outside of the Facility.

1.7 LABORATORY AND RADIOLOGY SERVICES

The Contractor shall arrange laboratory and radiology services to be performed on-site (within the Facility) to the extent reasonably practicable. The Contractor shall make appropriate off-site arrangements for required laboratory and radiology services that cannot be rendered on-site. The Contractor will arrange and coordinate with the Sheriff's Office for the transportation for such off-site services. Costs for such services shall be the responsibility of the Agency.

1.8 TRANSPORTATION

The cost of emergency medical transportation will be considered an off-site service. Costs for such services shall be the responsibility of the Agency. All other non-emergent transportation relating to the provision of health services shall be the responsibility of the Agency.

1.9 FINANCIAL LIABILITY FOR NON-CONTRACTOR SERVICES

All financial liability for hospitalizations, inmate transportation, off-site medical care, diagnostic services, specialty consultation and services, dental services, specific medications, required prosthesis, and individual medical devices shall be the responsibility of the Agency.

1.10 INMATES FROM OTHER JURISDICTIONS

The Contractor will provide on-site services for inmates incarcerated at the Facility for the Arkansas Department of Corrections, Arkansas municipalities, the U.S. Marshals, the Federal Bureau of Prisons, and/or other custodial jurisdictions. However, hospitalizations, off-site services, specialty services, and pharmaceutical costs associated with inmates from other jurisdictions shall not be the responsibility of the Contractor. The Contractor shall promptly notify the Jail Administrator for any needed pharmaceutical, specialty service or off-site services for such inmates and shall provide documentation of required treatment to the custodial jurisdiction as requested. Upon receipt, the Contractor shall submit all related bills to the Agency

for appropriate processing.

### 1.11 IMMUNITY FROM LIABILITY

The Contractor agrees to indemnify and to hold the Agency harmless for, from, and against claims, suits, reasonable attorney's fees, damages, or injuries to persons or property or other liabilities arising out of the sole negligence of the Contractor or the Contractor's personnel to properly provide medical care or administration pursuant to the terms of this Contract; including but not limited to claims for violation of privacy, medical malpractice, governmental enforcement or remedial actions, federal or state discrimination claims and tort actions.

Immunity from liability and/or indemnity shall not extend to the Agency for the actions, omission of action, neglect, the prevention of any person from receiving medical care, or the lack of personnel training, by the Agency or any Agency personnel or agents.

The Contractor shall not be responsible for any claims arising from the negligence or torts on the part of the Agency or any Agency personnel or agents in promptly and/or accurately presenting a person to the appropriate Contractor's personnel or independent contractors if it should have been reasonably known that the individual was in need of medical attention, or in denying Contractor or its personnel access to treat any such individuals in need of medical attention. The Contractor shall not be responsible for the failure of the Agency or Agency personnel or agents to obtain emergency medical care in the event that Contractor personnel are not available at the Facility.

The Agency shall hold harmless the Contractor and the Contractor's officers and personnel against any loss or damage, including attorney's fees or other litigation costs, caused or necessitated by the sole negligence of the Agency, Agency employees and agents, and/or other vendors which is related to medical treatment or care.

The terms and provisions of this Section 1.11 shall survive the termination of this Contract.

### 1.12 THIRD PARTY PAYORS

The Contractor shall assist with obtaining private health insurance information, whenever possible, to help ensure claims are billed appropriately for applicable off-site and specialty care medical expenses. However, in no event shall any patient be denied access to appropriate medical care due to a lack of insurance coverage, nor shall insurance coverage and/or a patient's financial condition be taken into consideration when rendering medical care or in the exercise of medical decision-making by the Contractor or its personnel.

### 1.13 INMATE MEDICAL FEE FOR SERVICE SYSTEM

The Contractor and Agency may implement an inmate fee for medical services program for medical encounters as directed by the Agency. Any inmate charges will be established by the Agency in accordance with Arkansas State Statutes. Fees for services shall be collected directly by the Agency and will be utilized by the Agency. The Contractor will not be responsible to collect any of the fees from the inmates.

1.14 NEGOTIATION OF DISCOUNTS

The Contractor shall use its best efforts to negotiate discounts for medical services and pharmaceuticals. The Agency will be allowed to use the contractual discounts negotiated by the Contractor.

1.15 PERSONNEL RECORD KEEPING

The Contractor shall, upon request, provide to the Agency proof of licenses and/or certificates for all Contractor professional staff. Personnel files of Contractor's employees assigned to the Facility shall be maintained at Contractor's corporate office and shall be available to the Agency upon written request.

1.16 HEALTHCARE PERSONNEL SERVICES PROVIDED

All medical and mental health personnel providing services through the Contractor under this Contract shall be the employees and/or agents of the Contractor and not of the Agency. Such individuals shall hereby be referred to as the "Healthcare Personnel." All wages, worker's compensation, insurance, benefits, vacations, and claims of any kind relating to the Healthcare Personnel provided by the Contractor shall be the sole responsibility of the Contractor and not of the Agency. Healthcare Personnel associated with the terms of this contract shall not include employees and/or agents of the Agency.

1. The Contractor shall provide medical unit coverage to include:

    a. **Up to seventy-seven (77) hours a week (11 hours a day / 7 days a week) of Nursing Services (RN, LPN, etc.);**
    b. **Up to one (1) physician or midlevel provider (ARNP or PA) onsite or telemedicine patient clinic per week, granted capabilities are made available for such services by the Facility;**
    c. **A physician or midlevel provider who will provide 24 hours a day, seven days a week, EMERGENCY on-call coverage for consultation on an as needed basis.**

2. The Healthcare Personnel shall perform intake screenings while at the Facility. Intake screenings performed by detention staff while Healthcare Personnel are not at the Facility shall be reviewed by Healthcare Personnel within forty-eight hours of being conducted. Inmates identified with significant health concerns will be scheduled for follow-up care, as appropriate.

3. Healthcare Personnel shall administer medications, as prescribed, while at the Facility;

4. Healthcare Personnel shall conduct sick call triage and follow-up, as indicated; and

5. Healthcare Personnel shall provide appropriate and timely response to medical needs and emergencies during regularly scheduled hours at the Facility.

1.17 SATISFACTION WITH HEALTHCARE PERSONNEL

In recognition with the sensitive nature of the Facility's operation, if the Agency becomes dissatisfied with any member of the Contractor's Healthcare Personnel, the Agency shall provide Contractor written notice of such dissatisfaction and the reason(s) therefore. Following receipt of such notice, Contractor shall use reasonable efforts to resolve the dissatisfaction. If the problem is not resolved to the satisfaction of the Agency within ten (10) business days following the Contractor's receipt of the notice, Contractor shall remove the individual from providing services at the Facility within a reasonable timeframe considering the affects of such removal on Contractor's ability to deliver healthcare services and recruitment/hiring of an acceptable replacement.

1.18 POLICIES AND PROCEDURES / PROTOCOLS

A written manual of the Agency and Contractor's standardized policies and defined procedures will be available at all times for the Contractor's personnel. The Contractor's nursing protocols shall be devised and approved by a physician licensed in the State of Arkansas. Policies and procedures and nursing protocols will be reviewed and revised as necessary.

1.19 NON-INMATE HEALTH SERVICES

Non-inmate health services shall be provided in the form of emergency care for Facility staff and visitors for the purpose of stabilizing the condition and arranging for transport. Emergency services include first aid, assessment, stabilization and the coordination of transport of employees or visitors who become ill or injured in the Facility.

The Contractor shall make available the Hepatitis B vaccination program and annual Tuberculosis Skin Testing (TST) for all Facility staff as requested by the Sheriff. However, the Agency will bear the cost of the vaccine and serum.

1.20 EMERGENCY ASSISTANCE

The Contractor shall, in times of emergency or threat thereof, whether accidental, natural or man-made, provide medical assistance to the Facility to the extent or degree required by policies and procedures.

1.21 TESTIFYING IN COURT

The Contractor personnel shall be aware that they might, from time to time, be subpoenaed to testify in court or at a deposition regarding medical treatment. The Contractor will keep the Agency informed of any and all requests.

1.22 MEDICAL RECORDS REQUIREMENTS

An electronic health record consistent with state regulations and community standards of practice shall be maintained for each inmate held beyond the first appearance in court for services rendered following the inmate's assignment to a housing area. These records shall be kept separate from the jail confinement records of the inmate on a server designated and owned by the

Agency.

In any case where medical care is at issue, or in any criminal or civil litigation where the physical or mental condition of an inmate is at issue, the Contractor shall make accessible to the Agency such records and, upon request, provide copies. The Contractor additionally acknowledges compliance with and understanding of all applicable HIPAA requirements as they apply to correctional facilities.

The Contractor acknowledges and agrees that all records prepared or acquired by the Contractor during performance of services under the Contract are the property of the Union County Sheriff's Office. The Contractor shall be considered the records custodian during the duration of the Contract. Upon the termination of this Contract, all inmate medical records shall remain in the care and custody of the Agency. Inactive medical records will be maintained in accordance with the laws of the State of Arkansas.

The Contractor shall be responsible for costs associated with leasing and/or maintenance of the electronic health record software program. However, all costs associated with computer hardware and server maintenance and/or replacement and software other than the electronic health record program shall be the responsibility of the Agency.

## II. DUTIES OF AGENCY

### 2.1 MONTHLY REIMBURSEMENT FOR SERVICES

The reimbursement for the Contract shall be paid by the Agency to the Contractor on a monthly basis. The monthly reimbursement shall be in the amount of Eighteen Thousand, Three Hundred Seventy-Seven Dollars and Zero Cents ($18,377). All monthly reimbursements shall be eligible to be pro-rated for any partial months and subject to any reconciliation as applicable. The first payment for the month of August 2021 shall be paid to the Contractor by the 1st day of September 2021 for the services administered in the month of August. All subsequent payments shall be paid in the full amount by the Agency to the Contractor by the 1st day of each month for services rendered the previous month.

This Agreement shall cover services provided by the Contractor for the Agency with a facility average daily population (ADP) up to two hundred fifteen (215) inmates. The ADP will be calculated as the monthly total for all inmates in the jail at 8:00am each day divided by the number of days in that month. Should the ADP exceed 215 inmates for three consecutive months, the Agency agrees to renegotiate the terms of the Contract in good faith.

The Contract shall be subject to an annual increase for the reimbursement for services in the amount of 2.80% beginning August 2022 and each subsequent year thereafter.

### 2.2 USE OF FACILITY, EQUIPMENT AND SUPPLIES

The Agency shall be responsible for providing the non-exclusive use and access to certain office equipment (phones, computers, etc.), office supplies (chart folders, pens, paper, etc.) durable medical equipment (exam tables, sinks, cabinets, etc.), internet connectivity, and phone service required for the administrative operation of the medical unit. Agency agrees that the Contractor

will be provided appropriate space in the Facility to perform all required duties and that the Contractor will be allowed use of the medical office areas, medical equipment, and medical supplies currently at the facility at the initiation of services.

In the event additional durable office or medical equipment needs to be purchased, or existing equipment needs to be repaired, it will be the Agency's responsibility to purchase/repair the required equipment, and it will be owned by the Agency. Provided that, the Contractor shall provide and bear the cost of standard disposable medical supplies, as well as the following: exam table, exam light, vital station, desk, fax machine, copy machine, file cabinets, and other office furniture.

### 2.3 MEDICAL WASTE

The Agency shall be responsible to arrange for the disposal of medical waste, including infectious or hazardous medical waste. The material must be removed from the Facility and disposed of as regulated by federal, state and local laws. Costs for such services shall be the responsibility of the Agency.

## III.   CONTRACT TERM

The term of this Contract shall commence on August 1, 2021 and will continue through July 31, 2022. The Contract shall then be eligible for indefinite annual renewals upon mutual agreement of both parties.

## IV. CONTRACT TERMINATION

### 4.1 TERMINATION FOR CAUSE

If either party fails to fulfill its obligations under the Contract in a timely proper manner, or if either party violates any material covenant, agreement, or stipulation of the Contract, the aggrieved party shall thereupon have the right to terminate the Contract by giving written notice of termination to the other party, which such notice shall be given not less than thirty (30) calendar days prior to the stated effective date of termination. The notice shall specify the effective date of the termination, and the reasons therefore, unless the party to whom notice is given cures the breach to the satisfaction of the party giving notice prior to the effective date of termination.

### 4.2 TERMINATION FOR COVENIENCE

The Agency or the Contractor may terminate the Contract out of convenience at any time by giving written notice to the Contractor of termination, which such notice shall be given not less than ninety (90) calendar days prior to the stated effective date of termination.

### 4.3 PAYMENT UPON TERMINATION

Upon termination of this Contract for any reason, prior to the end of the then existing term, the Contractor will be paid up to the effective termination date such sums and expenses, prorated as necessary, in accordance with those monthly fees described in paragraph 2.1.

### 4.4 PROPERTY UPON TERMINATION

All health records, Agency policies and procedures, and Agency manuals shall be the property of the Agency and, at the termination of the Contract, shall remain the property of the Agency without further obligation.

## V. GENERAL TERMS AND CONDITIONS

### 5.1 ALTERATIONS TO CONTRACT

Any alterations, variations, modifications, or waivers of the provisions of the Contract will be valid only if they are reduced to writing, agreed upon by the parties, and attached to the original Contract.

### 5.2 FORCE MAJEURE

Neither party shall be liable in damages or have the right to terminate this Agreement for any delay or default in performing hereunder if such delay or default is caused by conditions beyond its control including, but not limited to Acts of God, Government restrictions (including the denial or cancellation of any export or other necessary license), wars, insurrections and/or any other cause beyond the reasonable control of the party whose performance is affected.

### 5.3 INDEPENDENT CONTRACTOR STATUS

It is mutually understood and agreed, and it is the intent of the parties hereto that an independent contractor relationship be and is hereby established under the terms and conditions of this Contract. Nothing in this Contract shall be construed to create an agency relationship, an employer/employee relationship, a joint venture relationship, or any other relationship allowing the Agency to exercise control or direction over the manner or methods by which the Contractor, its employees, agents or subcontractors perform hereunder, or the Contractor to exercise control or direction over the manner or methods by which the Agency and its employees, agents or subcontractors perform hereunder, other than as provided in this Contract.

### 5.4 SUBCONTRACTING

In order to discharge its obligation hereunder, the Contractor may engage certain physicians as independent contractors rather than employees ("Contract Professionals"). The Contractor shall not engage any Contract Professionals that do not meet the applicable professional licensing requirements and the Contractor shall exercise administrative supervision over such Contract Professionals as necessary to ensure the strict fulfillment of the obligations contained in this Contract. Services provided by Contract Professionals under this Contract shall be provided in a manner reasonably consistent with the independent medical judgment the Contract Professionals are required to exercise.

### 5.5 AGENCY STATUTORY DELEGATION

For purposes of asserting any statutory rights afforded to the Agency or the Facility to pay

providers for medical services at certain reduced rates, Agency designates the Contractor as its agent to assert such rights and privileges.

### 5.6 EQUAL EMPLOYMENT OPPORTUNITY

The Contractor will not discriminate against any employee or applicant for employment because of race, color, religion, sex, ancestry, national origin, place of birth, marital status, sexual orientation, age or handicap unrelated to a bona fide occupational qualification of the position or because of status as a disabled veteran or Vietnam-Era veteran. The Contractor will distribute copies of its commitment not to discriminate to all persons who participate in recruitment, screening, referral and selection of job applicants, and to prospective job applicants.

### 5.7 WAIVER OF BREACH

The waiver of either party of a breach or violation of any provision of this Contract shall not operate as, or be construed to be, a waiver of any subsequent breach of the same or other provision hereof.

### 5.8 NOTICES

Any notice of termination, requests, demands or other communications under this Contract shall be in writing and shall be deemed delivered: (a) when delivered in person to a representative the parties listed below: (b) 3 days after mailing when mailed by first-class certified mail, return receipt requested, addressed to the party at the address below; or (c) upon confirmation of receipt if sent by electronic means or facsimile to the parties listed below:

If for Turn Key:
Turn Key Health Clinics, LLC
Attn: Flint Junod, CEO
19 NE 50th Street
Oklahoma City, OK 73105

Telephone: (405) 516-0276

If for Union County Sheriff's Office:
Union County Sheriff's Office
Attn: Ricky Roberts, Sheriff
250 American Road
El Dorado, AR 71730

Telephone: (870) 864-1970

Either party may change such address or phone number from time to time by providing written notice as provided above.

### 5.9 GOVERNING LAW

This Contract shall be governed by and construed in accordance with the laws of the State of

Arkansas regard to the conflicts of laws or rules of any jurisdiction.

### 5.10 COUNTERPARTS

This Contract may be executed in several counterparts, each of which shall be considered an original and all of which shall constitute but one and the same instrument.

### 5.11 TITLE OF PARAGRAPHS AND INTERPRETATION

Titles of paragraphs are inserted solely for convenience of reference and shall not be deemed to limit, expand or otherwise affect the provisions to which they relate. Further, as used in this Contract, the word "or" shall have the conjunctive as well as the disjunctive meaning and refers to alternatives that are not necessarily exclusive. As used in this Contract, references to "include" and similar terms shall be construed as if followed by the phrase "without limitation."

### 5.12 SEVERABILITY

In the event that any one or more provisions of this Contract shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Contract and this Contract shall be construed and enforced as if such invalid, illegal or unenforceable provision had never been contained herein.

### 5.13 ENTIRE CONTRACT

This Contract constitutes the entire agreement of the parties and is intended as a complete and exclusive statement of the promises, representations, negotiations, discussions and agreements that have been made in connection with the subject matter hereof. This Contract may be amended at any time, but only with the written consent of all parties.

IN WITNESS WHEREOF, the parties have caused this Contract to be executed as their official action by their respective representative, each of whom is duly authorized to execute the same.

AGREED TO AND ACCEPTED AS STATED ABOVE:

TURN KEY HEALTH CLINICS, LLC.

Dated: June 23, 2021   By: _____
Flint Junod, Chief Executive Officer


UNION COUNTY SHERIFF'S OFFICE

Dated: 6/23/2021   By: _____
Ricky Roberts, Sheriff

FOR THE COUNTY OF UNION

Dated: 6-23, 2021   By: _____
Judge Mike Loftin

12

**UNION COUNTY SHERIFF'S OFFICE**
**CONTRACT FOR HEALTHCARE PERSONNEL AND ADMINISTRATION**
**FIRST AMENDMENT**

This Amendment shall serve as a revision to the Contract for Healthcare Personnel and Administration (the "Main Agreement") between Union County, Arkansas on behalf of the Union County Sheriff's Office (collectively "Agency") and Turn Key Health Clinics, LLC ("Contractor") at the Union County Detention Center in El Dorado, Arkansas.

In consideration to the mutual covenants contained herein, the receipt and sufficiency of which are hereby acknowledged, it is agreed upon as follows:

1. The terms and conditions of this Amendment, as set forth, shall be effective as of August 1, 2022 through December 31, 2022.

2. In all other respects, the terms and conditions of the Main Agreement and any subsequent amendments or renewals thereto shall continue unchanged and remain in full force and effect.

**TURN KEY HEALTH CLINICS, LLC.**

Dated: 7/22, 2022   By: _____
Flint Junod, Chief Executive Officer

**UNION COUNTY SHERIFF'S OFFICE**

Dated: 7/24, 2022   By: _____
Ricky Roberts, Sheriff

**FOR THE COUNTY OF UNION**

Dated: 7/28, 2022   By: _____
Judge